E-FILED
Tuesday, 30 June, 2009  11:46:50 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| JULIE SIDELL, Guardian of Gretchen Sidell, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 05-CV-1001 ) |
| BARRY S. MARAM, Director of Illinois Department of Public Aid, | ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

On January 14 , 2009, Judge McDade entered summary judgment in favor of Plaintiff on her claims under the Americans with Disabilities Act and the Rehabilitation Act. A permanent injunction followed, "enjoining defendant from failing to provide funding for the level of skilled nursing services that Gretchen Sidell requires to continue residing at her home ... ." (2/24/09 Order, para. 2). Plaintiff was awarded costs under Fed. R. Civ. P. 54(d)(1), and attorney's fees and litigation expenses "at the discretion of the Court and upon Motion . . . ." Id. At para. 3. The issue was referred to the undersigned by Judge McDade.

Before the Court are Plaintiff's petitions for fees, costs, and litigation expenses, specifically: 1) a petition for award of attorney's fees and costs by Plaintiff's attorneys from Equip for Equality (d/e 80); and 2) a motion for approval of litigation expenses and costs by Plaintiff's attorneys from Prairie State Legal Services (d/e 79).

Prairie State Legal Services ("Prairie State") seeks only reimbursement for litigation expenses and costs, not attorney's fees. Defendant has no objection to Prairie State's petition, and the Court believes that the amounts sought are reasonable and were necessarily incurred. Accordingly, the Court recommends that Prairie State's petition be allowed, with total costs and litigation expenses awarded to Prairie State of $25,374.46.

Defendant does object to the petition for attorney's fees by Equip for Equality. Equip for Equality ("Equality") seeks attorney's fees, but not expense or costs, other than travel to attend the trial. "[A] prevailing party under the ADA is entitled to 'an award of fees for all time reasonably expended in pursuit of the ultimate result achieved.'" Shott v. Rush-Presbyterian-St. Luke's Medical Center, 338 F.3d 736, 739 (7th Cir. 2003)(quoted cites omitted). "The amount of the award is

determined by calculating a lodestar after looking to 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Robinson v. City of Harvey, 489 F.3d 864, 871 (7th Cir. 2007), *quoting* Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The lodestar amount may then be revised in either direction upon consideration of a host of additional factors."  Id.

**I.     The Court recommends an hourly rate of $250 for the Equip for Equality Attorneys**

Two of Equality's attorneys seek fees: Laura J. Miller, Equality's Managing Attorney, for $350/hour; and Janet M. Cartwright, for $325/hour. "An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question . . . (citation omitted).  The burden of proving the market rate is on the applicant."  Stark v. PPM America, Inc., 354 F.3d 666, 674 (7th Cir. 2004).

Miller avers that her "billing rate is $350.00 per hour, which I believe to be comparable or less than attorneys with similar backgrounds and credentials."  (Miller Aff. ¶ 4, d/e 80).  Cartright avers that her "hourly rate is $325.00 per hour.  This is the hourly rate set for me by Equip for Equality and the rate used in computing fees in settlements and courts proceedings.

The rate is comparable to attorneys in private practice with my level of expereince [sic], as evidenced by published opinions." (Cartwright Aff. ¶ 7, d/e 80).

There is no dispute that Equality's attorneys are experienced and successful in this area of law, but their conclusory averments do not establish their market hourly rate. First, it is not clear if they actually bill clients, or whether their fees are collected from the defendants like in this case, either through settlements or court orders. Second, even if the rates claimed are actually billed to clients, there is no information on the hourly rate that Equality's attorneys actually *recover* in cases, from their clients or otherwise. See Kennington v. Carter, 2005 WL 555367 *3 (S.D. Ind. 2005) (not reported in F.Supp.2d)(attorney "must produce competent evidence that . . . *paying clients* are willing to be the hourly fee . . . ."). Further, the attorneys do not explain what "community" they are using to determine their market rate. *See, e.g.,* Jeffboat, LLC v. Director, Office of Workers' Compensation Programs, 553 F.3d 487, 490 (7th Cir. 2009)(national market might be appropriate benchmark for highly specialized practices). Nor do they provide the amount of fees that they have been awarded in other cases, though this information should be readily available and is probably

the best evidence of their market rate.  Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1998)(Where there is no fee-paying client, the "next best evidence of . . .market rate include...rates other attorneys in the area charge paying clients for similar work and evidence of fee award the attorney has received in similar cases.")(citation omitted).  Nor do they cite any of the "published opinions" that they assert support a fee of $325 or $350 per hour.

Defendant argues for a maximum hourly rate of $200, on the grounds that, in Sottoriva v. Claps, 06-3118 (C.D. Ill. Judge Scott), the parties stipulated, "for purposes of this case only," that appointed Special Assistant Attorneys in the Springfield area "have received a maximum of $200 per hour since the year 2000."  (d/e 83, Ex. B, Stipulation).  The Court does not see how the stipulation is binding concerning setting the market rate in this case.  Defendants also attach Judge Scott's opinion in that case, finding that the reasonably hourly rate for the plaintiff's attorney was $200. However, that finding was based on evidence of what the attorney had actually charged the plaintiff for an initial consultation, and what he had charged other clients during the relevant time.  Here, there is no evidence of what Equality charges it clients, if anything.  The Opinion, though, is

relevant evidence of what an experienced civil rights attorney in the Springfield area charged from 2005 to June 2008—about $200; the attorney's rate increased to $250 after June 2008.

The court believes that a rate of $250 is a reasonable hourly rate. Other cases in this District and in the Southern District of Illinois have allowed rates from $200-300 per hour for attorneys with like experience, depending on the circumstances. *See, e.g.,* R.H. v. Lewistown Community Unit School Dist., 07-1262 (C.D. Ill. Judge McDade)(4/9/09 order adopting this Court's recommendation of $300, brought by lead counsel in Title IX case); Sottoriva v. Claps, 06-3118 (C.D. Ill. Judge Scott)(1/28/09 Opinion, due process claims by State employee)($200, where that was actual rate attorney charged, in general, during time in question); Davis v. City of Springfield, 2008 WL 818331 (C.D. Ill., Judge Scott)(3/20/08 order, Title VII claim)($250, where that was rate charged to clients and rate recovered in other cases); Karraker v. Rent-A-Center, 2008 WL 1990346 (C.D. Ill., Judge McCuskey)(5/2/08 Opinion, ADA claim)($300 for New York counsel, where local counsel with just as much expertise charged $300); Reid v. Boyd, 2007 WL 458205 (S.D. Ill. 2007)(excessive force claim against police officer)(remarking that $250 rate was "not particularly troubling" as market

rate, but not awarding fee on other grounds); <u>Horina v. City of Granite City, Illinois</u>, 2007 WL 1760873 (S.D. Ill. 2007)(First Amendment)(awarding $300, but remarking that it was "low end" of range); *see also* <u>Kennington v. Cottey</u>, 2005 WL 555367 (S.D. Ind. 2005)(ADA claim)($275, where that was market rate in area and case was straightforward).  Here, the upper end of the range–$300– does not appear justified despite the attorneys' experience, given their failure to offer evidence of their market rate, and the fact that they did not act as lead counsel in the case (see below).

**II.    The Court recommends that Attorney Miller's hours be reduced by 5.5 hours, from 21.8 to 16.3 hours.**

Laura Miller, Equality's Managing Attorney, seeks 21.8 hours of compensable attorney time.

It appears from the time entries and the docket that Equality's attorneys acted as co-counsel for Plaintiff in primarily an advisory and supportive role to the Prairie State attorneys, who were lead counsel.  The Prairie State attorneys filed the case in January 2005 and were the only attorneys of record for Plaintiff, except for Peoria County States Attorney Steven Giebelhausen, until June 19, 2008, after the trial, when Attorney Cartright from Equality moved to "substitute" herself for the Peoria States Attorney Geibelhausen.  (d/e's 68, 69).

Defendant maintains that Equality's attorneys have not justified their services, given that the Prairie State attorneys were already in the case acting as lead counsel.  However, given the expertise and experience of Equality's attorneys in this area of law, the Court believes that their role was likely important to Plaintiff's success.  For example, the entries show that the Equality attorneys located and worked with Plaintiff's expert, advised the Prairie State attorneys on the proof needed and the deposition questions to ask, drafted cross examination questions, and Prairie State's filings.  The fact that the Prairie State attorneys did the bulk of the work does not necessarily mean that Equality's work was duplicative or unnecessary.

With that in mind, the Court turns to the specific time entries of Attorney Miller.  The Court considers only those entries to which Defendant has objected, which are listed in a table as Exhibit A to Defendant's Objections.  (d/e 83).  The Court agrees with Defendant that not enough information is given on the entries dated 1/19/05, 5/26/05, 5/27/05, 5/18/07, and 5/13/07, which together total 3.3 hours.  *(See* d/e 80-2; d/e 83, Ex. A). For example, there is no information about what the "AG issue" was, so it is not possible to tell whether 2.3 hours was reasonably expended discussing

it. (5/26-27 entries). Similarly, the entries do not reveal why talking to "NAPAS" was necessary (1/19/05), the general nature of the 5/18/07 conference call, or the reason for updating "Barry T" on the trial (5/13/08). The Court thus recommends a reduction of 3.3 hours for time entries lacking sufficient information.

Miller's 4/6/06 entry is also somewhat lacking in information, stating: "Conf. Call; discussion with Debi Kennedy re: questions Bernie S. Should ask at deposition; get IMD survey questions and edit them." There is no explanation of what the IMD survey is, so the Court cannot tell why that was necessary or how long it might have reasonably taken. However, it is clear that Miller was discussing what questions should be posed at the depositions, and there were many depositions taken in this case. The Court accordingly believes that this entry should not be eliminated entirely but instead reduced by 1.4 hours (from 3.4 to 2 hours).

The Court also agrees with Defendant that there are some time entries for clerical work that should be deducted: the entries for 8/19/05, 4/3/06, 5/15/06, and 8/20/08, which total .8 hours. The work described in these entries appears administrative (such as, "correct records in practice manager" and scheduling meetings). However, the 8/18/05 entry to which

Defendant objects appears to relate to drafting an e-mail to Dr. Kirchner (Plaintiff's expert), rather than solely clerical work. The Court believes the 8/18/05 entry should stand. Lastly, the 8/16/05 entry to which Defendant objects (.8: "TC from SM re mtg at RIC, what need to prove; email Dr. Kirchner) does not appear duplicative to the Court. Further, Defendant will not be paying twice for the same work, since the Prairie State lawyers do not seek fees. The Court accordingly recommends a total deduction of .8 hours for clerical time.

In total, the Court recommends that Attorney Miller's time be reduced by 5.5 hours, to 16.3 hours. This would bring Miller's total compensable fees to $4,075.00 (16.3 x $250).

### III. The Court recommends that Attorney Cartwright's hours be reduced by 14.1, from 81.2 to 67.1 hours.

Attorney Janet Cartwright has worked for Equality since 1990 and has "represented clients in numerous ADA cases and Rehabilitation Act Matters, as well as negotiations on behalf of hundreds of clients with disabilities." (Cartwright Dec. ¶ 5, d/e 80-3). She has "tried several civil rights cases in state and federal courts and before administrative agencies . . . " and has "represented parties in several cases that resulted in published opinions." (Cartwright Dec. paras. 5-6).

Cartwright seeks fees for 81.2 hours of time. Defendant objects to 54.1 of those hours, the main objection being that Cartwright's time was duplicative and unnecessary, given that Prairie State already had two attorneys of record litigating the case.

The time entries show that Cartwright was brought into the case in April 2008, after the case had survived summary judgment and was approaching the final pretrial conference. Cartwright spent 36.5 hours from April 3, 2008 to May 2, 2008 (a few days before trial) reviewing the case, reviewing and abstracting the depositions, reviewing exhibits, drafting cross-examination questions, drafting a memo to the Prairie State attorneys, and discussing witnesses with Prairie State attorneys. Defendant objects to 21.8 of these pretrial hours, arguing that the work was duplicative and/or clerical.

Specifically, Defendant asserts that Cartwright's abstracts of the expert depositions was duplicative because Bernard Shapiro (one of the Prairie State attorneys) had already summarized those depositions. However, deposition summaries made during discovery do not necessarily obviate the need for deposition abstracts for trial. A useful trial deposition abstract is more than a summary of the deposition. It is(or should be)

organized to anticipate trial developments and quickly respond to those developments; preparing a good deposition abstract is not clerical in nature. The time Cartwright spent reviewing the depositions and preparing abstracts in preparation for trial does not appear to be excessive to the Court, given the number and size of the depositions.   Additionally, as already pointed out, Defendant is only being asked to pay for the work once, since the Prairie State attorneys do not seek fees.

Defendant also argues that Cartwright should not be compensated for drafting cross-examination questions, since she did not conduct those examinations at trial.  The Court sees no reason to conclude that Cartwright's work was duplicative of Bernard Shapiro's (who conducted the examinations at trial).  Cartwright drafted proposed questions for Shapiro to ask; there is nothing unusual or duplicative about that arrangement.  In any event, even if there was some duplication of work, Shapiro is not seeking payment of any of his fees, so there is no duplication of payment for that work.  Defendant is only paying once for the work; to which attorney that payment is made should not matter.

Cartwright also seeks payment for traveling to Peoria and attending the three-day trial, which included drafting "trial summaries" and conferring

with the Prairie State attorneys.  Defendant contends that Cartwright has not justified her need to be at the trial, since the Prairie State attorneys represented Plaintiff.  However, the Court believes it is reasonably clear that, given Cartwright's abstracting of the depositions, drafting of cross-examination questions, and conferences after each trial day, Cartwright was there in a supportive and advisory role to assist the Prairie State attorneys.  Given Cartwright's experience and her thorough knowledge of the depositions, the Court believes it is reasonable to infer that her presence was necessary at the trial.  In any event, as discussed, the Prairie State attorneys do not seek payment for their own trial attendance.  Defendant is being asked to pay for only one attorney's attendance at the trial, eight hours a day for each day of the trial (which is represented by the 6 hours per day for composing trial summaries and the 2 hours per day of conferring after trial).  That seems reasonable.

The Court does agree with Defendant that nine hours spent traveling to and from Peoria is excessive.  Cartwright apparently did not stay in Peoria, which did save hotel expense, but she seeks nine hours of, presumably, driving time at her hourly rate.  The Court believes that

Cartwright's travel time should be reduced by six hours, from nine to three hours.

The Court also agrees that Cartwright's 7/9/08 entry should be deducted. The entry says "Review Plaintiff's proposed Findings of Fact and Conclusions of Law." However, July 9, 2008, was after the trial. The review may have been connected to post-trial briefing, but there is not enough information to draw that conclusion. Accordingly, the Court recommends that this entry (2.6 hours) be deducted.

Lastly, the Court agrees with Defendant that Cartwright's time spent preparing the fee petition appears excessive. Cartwright spent 7.1 hours drafting the fee petition, which included 1.2 hours of assembling and reviewing the attorney records. The Court agrees that assembling the records is more clerical in nature, and also concludes that a more reasonable time for drafting the fee petition, given Cartwright's experience, is three hours total. The Court therefore recommends that 4.1 hours be deducted for the time spent on the fee petition.

In total, the Court recommends that Attorney Cartwright's time be reduced by 12.7 hours, to 68.5 hours. This would bring Miller's total compensable fees to $17,125.00 (68.5 x $250). Thus, if this

Recommendation is accepted, the total payable to Equality's attorneys will be $21,200.

WHEREFORE, the Court RECOMMENDS that the Motion for Approval of Litigation Expenses and Costs by Prairie State Legal Services, Inc., be GRANTED in full (d/e 79).  The Court recommends that Plaintiff be awarded $25,374.46 in costs and litigation expenses (comprised of $13,048.18 in taxable costs and $12,326.28 in litigation expenses).

The Court FURTHER RECOMMENDS that the Petition for Award of Attorney's Fees and Costs by Equip for Equality be GRANTED in part and DENIED in part (d/e 80).  The Court recommends that Plaintiff be awarded attorney's fees in the amount of $21,200.00.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1).  Failure to timely object will constitute a waiver of objections on appeal.  Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See also Local Rule 72.2.

ENTER:   June 30, 2009

　　　　　　　　　　　　　　　　　　　　　s/ Byron G. Cudmore

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　BYRON G. CUDMORE
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE